# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **HTC CORPORATION**, *et al*., | ) | |
| | ) | |
| Plaintiffs and, | ) | |
| Counterclaim-Defendants, | ) | |
| v. | ) | Civil Action No. 08-1897 (RMC) |
| | ) | |
| **IPCOM GMBH & CO., KG,** | ) | |
| | ) | |
| **Defendant and** | ) | |
| **Counterclaim-Plaintiff.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Defendant and Counterclaim-Plaintiff IPCom Gmbh & Co. ("IPCom"), KG, moves to dismiss the inequitable conduct counterclaims and to strike the inequitable conduct affirmative defenses asserted by Plaintiffs and Counterclaim-Defendants HTC Corporation and HTC America, Inc. (collectively "HTC"). IPCom contends that HTC fails to plead inequitable conduct with the particularity required by Federal Rule of Civil Procedure 9(b) and *Exergen Corporation v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009). The Court will grant the motion in part and deny it in part.[1]

### I.  FACTS

This is a patent dispute in which HTC seeks a declaration that it does not infringe IPCom's U.S. Patent No. 5,390,216 ("'216 Patent"), titled Synchronization Method of a Mobile Radiotelephone. IPCom already has sued HTC under German patent law based on the German

---

[1] Resolution of this motion to dismiss does not address or portend resolution of the pending motion to apply German law.

counterpart to the '216 Patent, among others.[2]  IPCom responded to HTC's complaint by filing counterclaims asserting that HTC violates its '216 Patent and two others owed by IPCom, U.S. Patent No. 7,043,751 ("'751 Patent"), titled Method of Allocating Access Rights to a Telecommunications Channel to Subscriber Stations of a Telecommunications Network and Subscriber Station, and U.S. Patent No. 6,879,830 ("'830 Patent"), titled Method for Handover, Mobile Station for Handover and Base Station for Handover.  HTC answered the counterclaims and asserted, among others, an affirmative defense that the three Patents, for differing reasons, are unenforceable due to inequitable conduct.  *See* Pl.'s Am. Answer ¶¶ 40-82.  The same allegations are contained in HTC's counterclaims.  *Id.* at 20 (Declaratory Judgment Counterclaims).  IPCom has filed a motion to dismiss all allegations of inequitable conduct; in response, HTC has withdrawn its Sixth Affirmative Defense regarding the unenforceability of the '216 Patent.  *See* HTC's Opp'n to IPCom's Mot. to Dismiss ("HTC's Opp'n") [Dkt # 87] at 1, n.1.

## II.  LEGAL STANDARDS

### A.  Heightened Pleading Under Federal Rule 9(b)

IPCom's argument that HTC's counterclaims fail to state a claim upon which relief can be granted is based on its belief that HTC has failed to satisfy the heightened requirements for pleading fraud as set forth in Federal Rule of Civil Procedure 9(b).  While Rule 8 requires that every complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each averment of a pleading be simple, concise, and direct," Fed. R. Civ. P. 8(a),

---

[2] *See* Pl.'s and Counterclaim-Def.'s Am. Answer & Declaratory J. Countercls ("Pl.'s Am. Answer") [Dkt. # 60] at 3, ¶ 21 ("HTC admits that in April 2008, IPCom initiated proceedings in Germany against HTC Corporation for infringement of the European counterparts of the '216 patent and the '751 patent, and IPCom initiated proceedings against certain wireless service providers for using HTC phones in violation of the European counterparts of the '216, '751 and '830 patents.").

Rule 9(b) requires any party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). These rules are not contrary to one another, but should be read in conjunction. *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004).

The Federal Circuit has held that "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). Also, while Rule 9 allows "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally," "'generally' is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009). "Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330.

### B. The Patent Application Process

An application for a patent must be submitted to the Director of the United States Patent and Trademark Office ("PTO"). 37 C.F.R. § 1.51(a). A complete patent application includes: a specification including one or more claims; an oath or declaration that the applicant believes himself to be the original inventor of the process or invention to be patented; drawings, if necessary; and the "prescribed filing fee, search fee, examination fee, and application size fee." 37 C.F.R. §

1.51(b); *see* 35 U.S.C. §§ 112 & 115.  A claim specification must contain a written description of the invention to be patented and the process of making and using it, in "full, clear, concise, and exact terms" such that any person skilled in the art to which it pertains could make and use it.  35 U.S.C. § 112.  The claim or claims included in the specification must point out the specific subject matter which the applicant believes is his invention. *Id.*

"Individuals associated with the filing and prosecution of a patent application," as such persons are defined in 37 C.F.R. § 1.56(c), have a duty to disclose to the PTO any information material to the "patentability" of their claims.  *Id.* § 1.56.

> A patent by its very nature is affected with a public interest.  The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability. *Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section. . . .*  The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) or 1.98.  However, *no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct*.

*Id.* § 1.56(a) (emphases added).  "A breach of [the duty of candor and good faith], which breach can include affirmative misrepresentations of material facts, failure to disclose material information, or submission of false material information, coupled with an intent to deceive, constitutes inequitable conduct" and can render a patent unenforceable.  *Li Second Family L.P. v. Toshiba Corp.*, 231 F.3d 1373, 1378 & 1381 (Fed. Cir. 2000).

Information is material if it tends to prove that the applicant's claim is unpatentable

or challenges a position the applicant takes in asserting the patentability of his claim. 37 C.F.R. § 1.56(b). "The threshold showing of materiality . . . can be met by showing a reasonable examiner would have considered such information important in deciding whether to allow the application." *Aventis Pharma S.A. v. Amphastar Pharms., Inc.*, 176 Fed. Appx. 117, 119-20 (Fed. Cir. 2006) (citing *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1316 (Fed. Cir. 2006)); *Molins Plc v. Textron*, 48 F.3d 1172, 1179 (Fed. Cir. 1995) ("[T]he standard to be applied in determining whether a reference is 'material' is not whether the particular examiner of the application at issue considered the reference to be important; rather, it is that of a 'reasonable examiner.'"). However, information is not considered "material to patentability," and is therefore not subject to disclosure, when it is cumulative of information already included in the record of the patent prosecution. *See* 37 C.F.R. § 1.56(b); *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1367 (Fed. Cir. 2008) ("It is well-established, however, that information is not material if it is cumulative of other information already disclosed to the PTO.").

### III.  ANALYSIS

As to the '830 and '751 Patents, HTC basically alleges that the patent applicants failed to disclose material prior art to the PTO and thus committed fraud on the PTO. IPCom retorts that *Exergen* tightened the standards for pleading inequitable conduct under Federal Rule of Civil Procedure 9(b) and that HTC's pleadings fail under the new standards.

**A.  '830 Patent**

HTC argues that during the prosecution of the German application that corresponds to the '830 Patent, the European Patent Office issued a search report identifying a prior art U.S. patent and concluded that the claims of the corresponding German application lacked novelty over

the identified prior art. Because the patent applicants for the '830 Patent in the United States failed to disclose this prior art, they allegedly violated 37 C.F.R. § 1.56 (Rule 56 of the PTO) and thereby committed fraud.

However, without regard to the effect of *Exergen* on this area of patent law, the PTO already has reexamined the '830 Patent and rejected HTC's argument. On July 21, 2009, the PTO found that the "McDonald Patent" — the prior art reference identified by HTC in connection with the '830 Patent — is cumulative and fails to raise new issues. Thus, "a reasonable examiner would <u>not</u> consider the teachings of the McDonald patent important in deciding to allow the claims being considered." Def.'s Request for Judicial Notice [Dkt. # 69], Ex. H at 10 (PTO Decision Granting Reexamination at 8) (emphasis in original).[3] The fact that the European Patent Office concluded that the McDonald Patent was material cannot make the patent applicants' failure to submit it in connection with the '830 Patent in the United States a fraud, when the PTO has found it merely cumulative of other available and submitted information. The PTO concluded that "[i]t is <u>not</u> agreed that McDonald raised a [substantial new question] of patentability as to claims 1-18 of the ['830] patent. Particularly, McDonald fails to teach those significant limitations discussed above, thus McDonald is cumulative, thereby also failing to raise any new issues." *Id.*

There is no fraud when a missing reference is merely cumulative. *See* 37 C.F.R. § 1.56(b); *Star Sci., Inc.*, 537 F.3d at 1367. HTC's counterclaim and affirmative defense that inequitable conduct renders the '830 Patent unenforceable will be dismissed and stricken.

---

[3] The Court takes judicial notice of the PTO pleadings. A court may take judicial notice of court documents and other public records. *See Covad Comms. Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (permitting judicial notice of facts in public records of other proceedings); *Jane Does I Through III v. District of Columbia,* 238 F. Supp. 2d 212, 216-17 (D.D.C. 2002) (court may take judicial notice of public records of prior litigation).

### B.  '751 Patent

As to the '751 Patent, HTC's Amended Answer and Counterclaims identify three precise standards documents as the prior art that was not submitted to the PTO.  *See* Am. Answer ¶ 58.  HTC specifically accuses certain named inventors of the '751 Patent, *id.* ¶ 52, and explains where, when, and how these inventors allegedly became aware of the documents that were withheld from the PTO.  *Id.* ¶¶ 59-60.  These allegations clearly provide sufficient notice to IPCom to allow it to prepare its defense.  Furthermore, HTC has satisfied *Exergen's* "who, what, when, where, and how" standard with respect to pleading inequitable conduct.  *Exergen*, 575 F.3d at 1327 (noting that it was "following the lead of the Seventh Circuit in fraud cases, [and . . .] hold[ing] that in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO").  HTC also has met *Exergen*'s requirement that when a party makes allegations on information and belief, its beliefs are reasonably supported by facts.  *Exergen*, 575 F.3d at 1330.  For example, HTC alleges, on information and belief, that "the GSM 04.60 standards were also known to [two named inventors of the patent]" and explains the basis for this belief — these standards were referenced in a meeting at which at least one inventor was listed as a participant.  Am. Answer ¶ 60.  Thus, HTC's claims fully comport with Rule 9(b).

IPCom seeks to avoid this conclusion by arguing that the prior art references are lengthy and HTC has not proven that the named inventors read the particular pages of the standards documents that are relevant.  Such arguments, however, confuse the burdens of proof at trial with the pleading requirements of Rule 9(b).  *See Bartronics, Inc. v. Power-One, Inc.*, 245 F.R.D. 532, 537 n.3 (S.D. Ala. 2007) (patentee's motion to dismiss accused infringer's inequitable conduct

pleadings were denied in part because "[w]hile Bartronics is correct that defendants must prove knowledge and intent at trial in order to prevail on this theory of relief, they are under no obligation to make such an onerous showing at the pleadings stage. Plaintiff's argument confuses these very distinct burdens."). While *Bartronics* preceded *Exergen*, the Court does not read *Exergen* to have affected its analysis. PTO Rule 56 is still on the books and addresses the possibility that a patent applicant may unfairly obtain a patent because it hid prior art from the PTO. *Exergen* adopted a heightened pleading standard, fully met by HTC's pleadings concerning the '751 Patent; it did not otherwise alter the burdens of proof. Therefore, IPCom's motion to dismiss and strike HTC's inequitable conduct counterclaims and affirmative defenses regarding the '751 Patent will be denied.

## IV.  CONCLUSION

For the reasons stated above, the pending motion to dismiss and strike HTC's inequitable conduct counterclaims and affirmative defenses [Dkt. # 67] will be granted in part and denied in part. The motion is conceded as to the '216 Patent, will be granted as to the '830 Patent, and will be denied as to the '751 Patent. A memorializing order accompanies this memorandum opinion.


Date:   December 3, 2009                                   /s/
                                                   ROSEMARY M. COLLYER
                                                   United States District Judge