## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HTC CORPORATION et al. | ) | |
| *Plaintiffs and* | ) | |
| *Counterclaim-Defendants* | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:08-cv-01897- RMC** |
| | ) | |
| **IPCOM GMBH & CO., KG,** | ) | |
| *Defendant and* | ) | |
| *Counterclaim-Plaintiff* | ) | |

### IPCOM GMBH & CO., KG'S MOTION TO STRIKE
### THE DECLARATION OF DR. CHRISTOPHER ROSE, Ph.D.

In accordance with Fed. R. Civ. P. 56(e), Defendant IPCom GmbH & Co., KG ("IPCom") brings this Motion to Strike the Declaration of Dr. Christopher Rose, Ph.D. [Dkt. No. 132-12] submitted in support of HTC Corporation and HTC America, Inc.'s Opening Claim Construction Brief and Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 112, ¶2 [Dkt. No. 132].  Dr. Rose's testimony in paragraphs 19, 23, 26, 27, 29, 35, 36, 42, and 44-48 is entirely conclusory and, therefore, inadmissible under the relevant legal standards.  Further, given both the flawed instructions and flawed process Dr. Rose used in developing his conclusory opinions, his testimony does not satisfy the relevancy and admissibility requirements of the Federal Rules of Evidence.  Accordingly, IPCom moves to strike this testimony from Dr. Rose.

Dated:  December 23, 2009

*/s/ Geoffrey K. Gavin*

| | |
|---|---|
| Stephen E. Baskin | Mitchell G. Stockwell |
| DC Bar Number 456015 | Geoffrey K. Gavin |
| Kilpatrick Stockton LLP | Kilpatrick Stockton LLP |
| Suite 900 | 1100 Peachtree Street, NE, Suite 2800 |
| 607 14th Street, NW | Atlanta, GA  30309-4530 |
| Washington , DC 20005-2018 | Telephone:  404.815.6500 |
| Telephone: 202.508.5800 | Facsimile:  404.815.6555 |
| Facsimile: 202.508.5858 | |

US2008 1031080.3

*Attorneys for Defendant-Counterclaim*
*Plaintiff IPCom GmbH & Co., KG*

US2008 1031080.3

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document has been filed this day using the Court's CM/ECF system, which caused a copy of the same to be electronically mailed to each counsel of record in this case.

*/s/ Geoffrey K. Gavin*

US2008 1031080.3

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **HTC CORPORATION et al.** | ) | |
| *Plaintiffs and* | ) | |
| *Counterclaim-Defendants* | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:08-cv-01897- RMC** |
| | ) | |
| **IPCOM GMBH & CO., KG,** | ) | |
| *Defendant and* | ) | |
| *Counterclaim-Plaintiff* | ) | |

**BRIEF IN SUPPORT OF IPCOM GMBH & CO., KG'S MOTION TO STRIKE**
**THE DECLARATION OF DR. CHRISTOPHER ROSE, Ph.D.**

Stephen E. Baskin
DC Bar Number 456015
Kilpatrick Stockton LLP
Suite 900
607 14th Street, NW
Washington, DC 20005-2018
Telephone: 202.508.5800
Facsimile: 202.508.5858

Mitchell G. Stockwell
Geoffrey K. Gavin
Catherine E. Hart
Kilpatrick Stockton LLP
1100 Peachtree Street, NE, Suite 2800
Atlanta, GA 30309-4530
Telephone:  404.815.6500
Facsimile:  404.815.6555

*Attorneys for Defendant-Counterclaim*
*Plaintiff IPCom GmbH & Co., KG*

## INTRODUCTION

In support of its Motion for Summary Judgment of Invalidity under 35 U.S.C. § 112, ¶ 2, HTC submitted the declaration of Dr. Christopher Rose ("Dr. Rose"). (*See* Dkt. No. 132-12, Expert Declaration of Christopher Rose, Ph.D. ("Rose Dec.").) Dr. Rose's declaration includes unsupported and conclusory allegations that numerous claim terms of U.S. Patent Nos. 5,390,216 (the "216 patent"), 7,043,751 (the "751 patent"), and 6,879,830 (the "830 patent") are fatally ambiguous. As detailed below, instead of conducting a meaningful and thorough investigation of the relevant evidence, Dr. Rose proffers mere conclusions, with no factual basis recited in support. And, even as to his "conclusory conclusions," he applied impossibly high and legally erroneous instructions provided by HTC's counsel that squarely contradict governing Federal Circuit precedent. That alone renders his testimony unreliable as failing to fit any "indefiniteness" issue, but HTC compounded its error by withholding critical evidence from Dr. Rose. Because Dr. Rose's conclusory assertions are inadmissible as neither relevant nor reliable, his conclusions should be stricken and HTC's motion denied.

## FACTUAL BACKGROUND

HTC hired Dr. Rose on October 29, 2009, to assist HTC in confirming that the "technical gist" of HTC's constructions were correct. (Ex. 1 (Rose Dec. 17, 2009 Depo.) at 22:10-13; 34:15-35:8; 39:2-15.) Dr. Rose opines that 11 terms in the three patents-in-suit are ambiguous because:

- As to the 216 patent: "The [insert phrase or term] in the context of frequency and frame timing is ambiguous and would not be understood as a term of art by one skilled in the art of cellular mobile telecommunications and networks at the time of the invention." (Rose Dec., ¶42 ("Initial Synchronization"); *see also* ¶44 ("'Coarse' and 'Fine'"); ¶45 ("Conducting a Coarse Frequency Synchronization"); ¶46 ("Conducting a Fine

1

Frequency Synchronization"); ¶47 ("Conducting a Frame Synchronization with Fine Frequency Synchronization"); ¶48 ("Carrying Out Preliminary Data Signal Processing").)

- As to the 751 patent: "'Access authorization data' would not have been understood by one of skill in the field of mobile telecommunications and networks at the time of the invention to have any special or particular meaning." (*Id.*, ¶35.)

- As to the 830 patent: "One skilled in the art of cellular wireless communications and networks at the time of the invention described by the '830 patent would not understand the term [insert term] to be a term of art." (*Id.*, ¶23 (link data); ¶26 (clause "if the network ...").) Dr. Rose also generally opines that claims 1, 12, and 18 in the '830 patent "are ambiguous as to the scope of the invention being claimed." (*Id.*, ¶19.)

As to each of these terms, Dr. Rose does not explain or discuss any relevant portions of the specification or other materials he relied upon. Nor, in his declaration, did he explain the standard he used to assess the ambiguity of the claim terms or what he meant by attempting to ascertain whether various claim phrases were "terms of art." In previous engagements, Dr. Rose had received written instruction concerning the relevant legal standards upon which his testimony would bear. (Ex. 1 at 43:9-45:15.) Oral instructions were provided here. (*Id.*) Specifically, HTC's counsel instructed Dr. Rose to consider first, whether the patents in suit utilized "terms of art," and, second, whether the patents in suit provided a "blueprint" sufficient for a skilled person to avoid infringement of the claims.[1]

---

[1] HTC did not inform Dr. Rose that his testimony was to be used to support HTC's contention that the patent claims were indefinite and that the patents were invalid. (Ex. 2 (Rose Dec. 18, 2009 Depo.) at 5:5-10 (Q: "Did anyone from HTC tell you that your testimony as provided in your declaration was going to be used in support of a motion for summary judgment that the patents were invalid? A: No, nobody told me that, no.").) Dr. Rose himself testified that he was not offering opinions on validity because "I don't think we're anywhere near that point, are we?" (*Id.* at 4:1-8.) Nor did HTC inform Dr. Rose that showing invalidity required clear and convincing evidence. (*Id.* at 5:18-23.)

As to the first issue, Dr. Rose, testified he was instructed with respect to a "term of art" as follows:

- "term of art is something that I was counseled about and term of art has a very specific meaning, I was told, and term of art means that if you say it – so if I tell you voltage controlled oscillator . . . that has a very specific meaning."  (Ex. 1 at 53:23-54:5.)

- "term of art as it was explained to me implies something very specific, and a way to do it or a known way to do it."  (*Id*. at 56:12-13.)

- "I was informed that term of art has a very special meaning that would tell you exactly what to do so I can't say coarse and fine are terms of art okay?"  (*Id*. at 192:21-24.)

- "term of art, I'm instructed, doesn't allow for multiple ways of doing things.  It means a particular -- you've got to know -- well, that is not -- let me back up here.  You have to know how to do it and there has to be a recipe.  That's my understanding."  (*Id*. at 57:16-23.)

Dr. Rose applied his understanding of "term of art" to each of the terms and phrases noted in his declaration (*id*. at 194:11-196:9), as well as his assessment of the phrase "evaluation unit" in the '751 patent.  (*Id*. at 210:14-21.)  As an example of a term that met this definition of "term of art," he indicated the phrase "VCO" is such a term because "VCO" stands for voltage controlled oscillator.  (*Id*. at 53:23-54:5.)  He testified that another common engineering term, however, such as "receiver," was not a term of art.  (*Id*. at 198:20-199:4.)

As to the second issue, Dr. Rose was instructed that:

- "what the patent has to be as it was explained to me is a blueprint for how to not infringe.  That is kind of a weird way to look at it.  I hadn't thought of it that way before but you have to layout what it is that you've actually done so that somebody who is schooled in

3

the art, you know, normal level of schooling in the art, can look at the patent and know how not to infringe.  That is one of the key issues."  (*Id.* at 42:2-10; *see also id.* at 59:4-62:25.)

Using an entirely different standard, Dr. Rose did opine that three terms would be "understood" by a person skilled in the art to have specific meanings.  Thus, he concluded that:

- For the phrase "'Deleting … and Freeing Up' and 'Deleted … Released,'" in the context of the 830 patent, "one of skill in the art … would understand that the term 'release' means to purge a communication by reassigning the resources." (Rose Dec., ¶27.)

- For the phrase "Means for Receiving Information Signals" in claim 13 of the 751 patent, Dr. Rose asserted that "[t]he term 'receive' as used in claim 13 and the remainder of the specification suggests more than just passively waiting to collect a bit stream … because the patent disclosure describes means for receiving must also be able to separate the 'access authorization data' from the remainder of the 'information signals.'" (*Id.*, ¶29.)

- For the phrase "Access Threshold Value" in the 751 patent, Dr. Rose asserted the specification "ascribes a particular meaning" and proceeded to articulate a proposed meaning in his declaration.  (*Id.*, ¶36.)

As to each of these conclusions, however, Dr. Rose did not identify the specific "context" or "disclosure" of the patents on which he relied to reach his conclusion.  (*See id.*, ¶¶27, 29, 36.) Nor did he explain why he used a different standard for these terms – assessing how these terms would be "understood" by a skilled persons in light of the specification – as opposed to the "term of art" standard he applied to ascertain that the 11 terms above were ambiguous.

In the course of his work on this engagement, Dr. Rose reviewed the patents themselves, certain of the GSM specifications cited in the 216 patent and the "file histories" of the patents.

4

Although his declaration indicates he "reviewed the claim construction positions submitted to the Court by both parties," (*id.*, ¶8), he actually testified that HTC did not reveal to him all of the parties' (or even HTC's) respective claim constructions.  (Ex. 1 at 32:18-36:3.)  In deposition, Dr. Rose admitted that he did not review all of the file histories.  (*See, e.g.*, *id.* at 233:17-234:19.)  Specifically, while he was informed HTC had submitted reexaminations, he did not recall reviewing those reexaminations and counsel for HTC represented they were not provided to Dr. Rose.  (*Id.* at 143:8-144:15.)  He likewise did not conduct any literature searches, review of prior patents in the field, or review of other extrinsic evidence.  (*Id.* at 197:17-198:12, 229:10-230:1; Ex. 2 at 6:24-7:7.)  There is thus no indication that Dr. Rose reviewed the evidence that IPCom provided HTC through the claim construction process leading up to the submission of opening briefs or the extrinsic evidence that HTC itself identified to IPCom pursuant to the procedures agreed upon in the parties' stipulation.

Finally, while Dr. Rose claims expertise in the field of communications, he acknowledged that his prior work before 1991 did not involve specific synchronization issues. (Ex. 1 at 10:6-11:5, 15:2-11.)  He admitted he was not then familiar with GSM technology; did not participate in developing GSM standards; and was unfamiliar with the standards for purposes of this case without referencing same.  (*See id.* at 19:16-20:9, 21:3-12, 75:15-76:1, 76:20-78:18, 78:24-79:5, 86:6-10, 92:19-93:13, 110:14-115:18.)  Dr. Rose testified, however, that a skilled person reviewing the 216 patent would be familiar with the GSM system and standards.  (*Id.* at 67:2-14.)  Nonetheless, he repeatedly could not answer questions about basic operations of a GSM phone.  (*See id.* at 67:2-14, 98:6-24, 110:14-112:6.)

US2008 1031080.3

## ARGUMENT AND AUTHORITY

I.     **Dr. Rose's Conclusory Testimony Is Inadmissible.**

A.     **Conclusory Expert Testimony is Inadmissible.**

"The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion . . . .   A court may strike all improper portions of an affidavit used to support or oppose a motion for summary judgment."   *Canady v. Erbe Elektromedizin GmbH*, 384 F. Supp. 2d 176, 180 (D.D.C. 2005) (citing Federal Rules of Civil Procedure, Rule 56(e)), *aff'd*, 182 F. App'x 988 (Fed. Cir. 2006).   Affidavits that fail to meet the requirements of Fed. R. Civ. P. 56(e), including those that include conclusory statements by providing opinions without specific facts, may be struck.   *See id.* at 188 ("Thus, the party opposing the motion for summary judgment of non-infringement 'must point to an evidentiary conflict created on the record ... [m]ere denials or conclusory statements are insufficient.'") (quoting *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002)); *see also Hayes v. Douglas Dynamics*, 8 F.3d 88, 92 (1st Cir. 1993); *Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1579-80 (11th Cir. 1985); *Mid-State Fertilizer Co. v. Exch. Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989); *Freeman v. Minn. Mining & Mfg. Co.*, 675 F. Supp. 877, 886-888 (D. Del. 1987).

That Dr. Rose's declaration is offered in support of, instead of in opposition to, a motion for summary judgment, does not change the standards to which it must conform.   Rule 56(e) and its associated case law make clear that unsupported, conclusory statements in affidavits, whether offered offensively or defensively, do not create nor foreclose triable issues of fact.   *See Hall v. C.I.A.*, 538 F. Supp. 2d 64, 68 (D.D.C. 2008) ("the plain language of Rule 56(e) . . . does not give any indication that its requirements are to be applied differently to an affidavit offered in support of summary judgment than to one offered in opposition . . . .").   Moreover, the Court "must view the evidence presented through the prism of the substantive evidentiary burden."

6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   Here, the patents-in-suit are presumed valid, and HTC is the party that must identify clear and convincing evidence of invalidity.  For example, a claim that a patent is invalid due to anticipation is proved by showing, in detail, that each claim element is disclosed in a single prior art reference.  *Koito Mfg. Co. v. Turn-Key-Tech.*, LLC, 381 F.3d 1142, 1152 (Fed. Cir. 2004).  But merely conclusory testimony is insufficient to prove anticipation.  *Id.* at 1152.  Nor can HTC argue that it may rely on conclusory testimony for claim construction since "conclusory unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005).

Thus, whether the issue is claim construction or invalidity by means of anticipation or indefiniteness, Dr. Rose's declaration must offer more than conclusions.

**B.    The Vast Majority of Dr. Rose's Testimony is Too Conclusory to be Admissible.**

Here, there can be no dispute that Dr. Rose states merely a series of conclusions – none of which are supported.  The paragraphs identified above contain a series of conclusions, without a shred of analysis or support.  While Dr. Rose claims to have reviewed patents and file histories, he nowhere references those evidentiary materials to explain or justify his conclusions.  His testimony is simply the classic *ipse dixit* of an expert declaring "it is so because I say it is so." *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (stating that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert").  But "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co.*, 877 F.2d at 1339.

7

That is especially true in the context of summary judgment, which seeks to adjudicate the claims on the merits based on undisputed, material facts. *See Hayes*, 8 F.3d at 92 (holding that an expert opinion submitted in the context of a summary judgment motion "must be more than a conclusory assertion about ultimate legal issues."); *Am. Key Corp.*, 762 F.2d at 1579-80 (holding that an expert opinion must "set forth facts" and in doing so, outline a reasoning arising from a logical foundation). The Federal Circuit just days ago reaffirmed the principle that conclusory testimony will not do. In *Intellectual Science and Technology, Inc. v. Sony Electronics, Inc.*, No. 2009-1142, 2009 WL 4798120, *6 (Fed. Cir. Dec. 15, 2009), the court evaluated an expert declaration opposing summary judgment of noninfringement. Although the expert stated "that the structures in the accused devices 'perform the same function as the claimed "data transmitting means" . . .in the same way . . . to achieve the same result,'" the court ruled "[t]hat conclusory statement … insufficient." *Id.* And, even though the expert in that case at least identified a diagram as support for his testimony, the Federal Circuit still found the testimony insufficient as a matter of law because the expert failed to offer sufficient specific evidence to permit a finder of fact to reach the asserted conclusion: "[The expert's] statement . . . lacked that vital identification and explanation." *Id.*

Here, Dr. Rose does not even identify a diagram in the patent. He just vaguely claims the patent disclosures either do, or do not, support a case for ambiguity – depending, of course, on which way HTC seeks to drive the outcome. Finally, the fact that Dr. Rose's testimony is entirely conclusory can perhaps best be seen by HTC's entire approach to its "indefiniteness" summary judgment motion. It did not bother to comply with LCvR 56.1 and provide a statement of material facts with evidentiary citations to the record. (*See* Dkt. No. 132 (HTC's Brief) at 7.) It instead simply cited a series of conclusions – that the patents all contained ambiguous terms.

US2008 1031080.3

It could not cite Dr. Rose's declaration for statements of fact, because all his declaration contains are mere conclusions.

## II.      The Standards Applied by Dr. Rose and the Process by Which He Reached His Conclusions Renders His Testimony Inadmissible.

*Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 591 (1993), explained that the party proffering expert evidence must demonstrate a valid connection, or "fit," between the evidence and an issue in the case.  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  *Id*. (citation omitted).

Here, the standard HTC instructed Dr. Rose to apply was facially improper.  "Claims are considered indefinite when they are not amenable to construction or are insolubly ambiguous. Thus, the definiteness of claim terms depends on whether those terms can be given any reasonable meaning.  Indefiniteness requires a determination whether those skilled in the art would understand what is claimed." *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp*., No. 2008-1218, 2009 WL 4349533, *10 (Fed. Cir. Dec. 3, 2009) (citation omitted).  Thus, "[d]etermining whether a claim is definite requires an analysis of whether one skilled in the art would understand the bounds of the claim when read in light of the specification.  If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more." *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998)  (citation, internal quotation marks, and ellipsis omitted).

The Federal Circuit does not say that a claim term is ambiguous if it is not a "term of art" or that claims must use such terms.  Nor does case law hold a term is ambiguous if it lacks the super-specialized "term of art" meaning HTC instructed Dr. Rose to apply.  To the contrary, in the context of assessing whether a claim term is structural, the Federal Circuit has said that "[t]o

9

help determine whether a claim term recites sufficient structure, we examine whether it has an **understood** meaning in the art." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004) (emphasis added, citation omitted).

And, the Federal Circuit has also held that the notion that a claim term must convey precise structure to be definite is a false premise.  Thus, in *Lighting World, Inc. v. Birchwood Lighting, Inc.,* 382 F.3d 1354, 1359 (Fed. Cir. 2004), the court distinguished the "premise that in order to be regarded as structural for purposes of § 112 ¶6, a claim limitation must identify a specific structure and not use a generic term that includes a wide variety of structures" as "unduly restrictive" because:

> In considering whether a claim term recites sufficient structure to avoid application of section 112 ¶ 6, we have not required the claim term to denote a specific structure. Instead, we have held that it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function.
> . . . .
> Thus, while it is true that the term "connector assembly" does not bring to mind a particular structure, that point is not dispositive.  What is important is whether the term is one that is understood to describe structure, as opposed to a term that is simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term "means for."

*Id.* at 1359-60 (internal citations omitted).

Second, HTC's instruction to Dr. Rose that a patent claim must provide a precise blueprint is directly contrary to the Federal Circuit's repeated holdings that breadth is not the same as indefiniteness and infringement is not part of the inquiry.  For example, *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1372 (Fed. Cir. 2008) *cert. denied*, 129 S. Ct. 1595 (2009), reversed the district court's holding of indefiniteness because it "was based on its misunderstanding that claim definiteness requires that a potential infringer be able to determine if a process infringes before practicing the claimed process."  The Federal Circuit

10

disclaimed any such approach in *Invitrogen Corp. v. Biocrest Manufacturing, L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005). We explained that Stratagene, in making a similar argument, was "really talking about the difficulty of avoiding infringement, not indefiniteness of the claim." *Id.* The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention.

*Id*. at 1372-73; *see also Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1575-76 (Fed. Cir. 1986) (term "so dimensioned" was not indefinite although dimensions could be defined only by reference to use); *Seattle Box Co., Inc. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984) (claim terms definite "even if [the alleged infringer] needed to experiment so as to determine the limits of the   . . . patent's claims") (citation omitted); *W.L. Gore & Assocs., Inc. v. Garlock, Inc*., 842 F.2d 1275, 1280 (Fed. Cir. 1988) ("imprecise claim limitation" is to be considered in infringement determination).

In short, HTC instructed Dr. Rose to decide whether the claim terms met a false premise – whether the claim terms had precise, specialized meanings that provide an exact recipe or "blueprint" for the skilled person to avoid infringement.  Dr. Rose's reaction that these were "weird" instructions was correct.  (Ex. 1 at 42:2-4.)  These standards have nothing to do with assessing indefiniteness and, independently, this flaw renders Dr. Rose's testimony inadmissible. *Compare Oxford Gene Tech., Ltd. v. Mergen Ltd*., 345 F. Supp. 2d 431, 437 (D. Del. 2004) (excluding expert opinion on anticipation not based on the required analysis).

The fundamental error HTC induced in incorrectly instructing Dr. Rose on the relevant standards was seriously compounded by his failure to investigate the issues.  While "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999), "[i]f the [expert] witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the

11

opinion, and how that experience is reliably applied to the facts."  Fed. R. Evid. 702 advisory committee's note.  Here. Dr. Rose does not explain how he reached his conclusions based on his skill and experience.

And, because HTC withheld from Dr. Rose the full record of relevant evidence, it resulted in Dr. Rose acting as a mindless "automaton" rather than a person with ordinary skill in the art who is a "person of ordinary creativity."  *Source Search Techs., LLC, v. LendingTree, LLC*, No. 2008-1505, 2009 WL 4546742, at *12 (Fed. Cir. Dec. 7, 2009) (rejecting arguments that term was indefinite to person of ordinary skill) (citations omitted).  Indeed, Dr. Rose's inability to articulate the basic requirements of the contemporary GSM standard – despite testifying that skilled persons would understand the 216 patent in light of that standard – confirms he simply applied his own subjective, overly narrow experience to the issue at hand, rendering his testimony unhelpful to any issue in dispute.  Thus, contrary to the standard, Dr. Rose judged "indefiniteness according to [his own] subjective impressions" rather than via the required "objective measure that recognizes artisans of ordinary skill are not mindless 'automatons.'"  *Id.*

## CONCLUSION

Dr. Rose's declaration is filled with conclusory assertions that fail to set forth the facts upon which he relies, or an outline of the line of reasoning arising from relevant aspects of his unarticulated experience or training.  Additionally, the instructions HTC provided, as well as the process employed by Dr. Rose, confirms that his testimony is simply too unreliable to support HTC's motion for summary judgment.  As a result, Dr. Rose's conclusions in paragraphs 19, 23, 26, 27, 29, 35, 36, 42, and 44-48 should not be considered by the Court.

US2008 1031080.3

Dated:  December 23, 2009

Stephen E. Baskin
DC Bar Number 456015
Kilpatrick Stockton LLP
Suite 900
607 14th Street, NW
Washington , DC 20005-2018
Telephone: 202.508.5800
Facsimile: 202.508.5858

_/s/ Geoffrey K. Gavin_
Mitchell G. Stockwell
Geoffrey K. Gavin
Catherine E. Hart
Kilpatrick Stockton LLP
1100 Peachtree Street, NE, Suite 2800
Atlanta, GA  30309-4530
Telephone:  404.815.6500
Facsimile:  404.815.6555

_Attorneys for Defendant-Counterclaim_
_Plaintiff IPCom GmbH & Co., KG_

13

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document has been filed this day using the Court's CM/ECF system, which caused a copy of the same to be electronically mailed to each counsel of record in this case.

*/s/ Geoffrey K. Gavin*

14