**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HTC Corporation and HTC America, Inc., <br><br>  Plaintiffs and <br>  Counterclaim-Defendants, <br><br> v. <br><br> IPCom GMBH & Co., KG, <br><br>  Defendant and <br>  Counterclaim-Plaintiff. | Civil Action No. 1:08-cv-01897 (RMC) |

**HTC'S OPPOSITION TO IPCOM'S MOTION FOR RECONSIDERATION OF THE "ASCERTAINING . . . WHETHER ACCESS IS ENABLED" CLAIMED PHRASE IN THE '751 PATENT**

By its Motion, IPCom requests that the Court simply toss aside half of its claim construction for the "ascertaining . . . whether an access . . . is enabled" clause recited in claim 13 of the '751 patent. IPCom's true intent, which it does not mention, is to broaden this claimed phrase to such an extent that it would cover phones that could perform as many "comparisons" as necessary with successively generated random numbers to always gain access nearly instantaneously, all using the very same transmission of "access authorization data." But such a construction would be flatly inconsistent with the language recited in the claim itself as well as the patent specification and the prosecution file history. Even the inventor admitted in his deposition that his invention requires that the phone must wait until the next transmission if access has been "barred." If the claim were construed so broadly that "ascertaining whether . . . access is enabled" allowed the phone to perform an infinite number of comparisons against the same transmitted access threshold value, then the network would be incapable of ever blocking access at all, vitiating the very purpose of the invention.

The central argument IPCom makes in its Motion is that there is no "textual basis" or "tether" for the "second part" of the Court's construction and so the "first part of the Court's construction . . . suffices" to define the claimed phrase. [IPCom Mot. for Recons. at 4-5] Yet,

1

the basis for the Court's *entire* construction stems from the recited phrase "ascertaining . . . whether access is enabled," as informed by the surrounding claim language, the specification and the file history. The claimed "evaluation unit" must ascertain (or find out with certainty) whether access can or cannot be accomplished by means of certain access authorization data transmitted from the network. As the Court properly found, *determining that access cannot be accomplished means that access is not enabled for the period of time until the next transmission of access authorization data by the network*. The Court's construction is a correct interpretation of the recited claim language, and is fully supported by the patent specification and the prosecution file history. Accordingly, IPCom's motion for reconsideration should be denied.

## I. THE INTRINSIC EVIDENCE SHOWS THAT ASCERTAINING THAT ACCESS IS DENIED MEANS THAT THE MOBILE STATION IS BARRED UNTIL THE NEXT TRANSMISSION FROM THE NETWORK

The "second part" of the Court's construction is not an "added extraneous limitation" as IPCom argues; rather, this language is necessary to properly interpret the whole meaning of the claimed "ascertaining . . . whether access is enabled" phrase. Instead of just assuming that access will be enabled, as IPCom invites the Court to do, a proper construction must explain what it means to ascertain that access is not enabled. Interpreting the claimed phrase in context with the surrounding claim language (as required), the phone must make a decision, after it has performed a particular numerical comparison, whether the phone can or cannot obtain access by means of the access authorization data that was transmitted by the network. Thus, the decision about whether access is enabled remains valid for the period of time until the next transmission of access authorization data.

### A. The Language of Claim 13 and the Specification Disclosure Are Consistent with the Court's Construction and Belie IPCom's Proposed Construction.

Starting with the claim language itself, the disputed phrase in claim 13 first defines what numerical comparison is to be performed:

> an evaluation unit for asking[,] when information signals with access authorization data means (65) as authorization data (45, 50 ,

2

> 55) are received, *whether the access authorization data (45, 50, 55) include an access threshold value (S) for comparison of the access threshold value (S) with a random number or a pseudo-random number (R).*

The comparison at issue is between, on the one hand, the access threshold value within the access authorization data that was received, and on the other hand, the random or pseudo-random number that was specifically generated by the mobile phone when that access threshold value was received for the purpose of performing that comparison.[1]

The "program" described with reference to Figure 4 in the '751 patent specification correlates the generation of the random or pseudo random number to the receipt of the 4-bit access threshold value (S):

> At program point 210, from the access threshold values S3, S2, S1, S0, the evaluation unit 60 ascertains the access threshold value S and draws a random or pseudo-random number R from the set of possible access threshold values S.

['751, 9:4-8] This occurs after the program already asked – in program steps 200 and 205 – whether the network had transmitted an access threshold value in the access authorization data. ['751, 8:64-9:4]

Next, the claim explains how that comparison is used to formulate a definitive conclusion:

> an evaluation unit … for *ascertaining*,
>
> > *as a function of an outcome of a comparison*[,]
>
> *whether an access* of the at least one subscriber station (5, 10, 15, 20) to the at least one telecommunications channel *is enabled*."

According to Webster's Collegiate Dictionary, the term "ascertaining" means "to find out or learn with certainty" and "whether" means "which one of the two." [Declaration of Jonathan M. James Ex 1 (excerpts from Merriam-Webster's Collegiate Dictionary, 10th Ed.)] Thus, the evaluation unit must find out or learn with certainty whether access can or cannot be granted by

---

[1] This meaning can be derived only by setting aside for a moment the unintelligible "access authorization data means" phrase (which, as detailed in HTC's Motion for Reconsideration, renders claim 13 invalid for indefiniteness).

means of the received access authorization data based on the result of the comparison of the access threshold value with the generated random number. If the random number that was drawn is insufficient when compared with the transmitted access threshold value, then the phone ascertains that it is not gaining access by means of this receipt of an access threshold value. The consequence to ascertaining that "access is not enabled" is that the phone would have to wait until the next transmission of access authorization data if it were to try again.

Following along once again with the "program" disclosed in the '751 specification, when the phone ascertains whether or not access is granted, the program concludes. In IPCom's own words and as depicted in Figure 4B, "what the specification teaches is that the 'ascertaining' phrase is completely finished when the program exits point 250 by granting access or exits at point 'C' (the "END") by denying access." [IPCom's Mot. for Recons. at 6]



IPCom continues by arguing that "[t]his 'program' that the specification describes correlates closely to the 'ascertaining' claim phrase in which access is granted 'as a function of an output of a comparison.'" [*Id.*]

IPCom's summary of the specification is correct, but actually supports the Court's claim construction and mandates against IPCom's truncated version of it. As shown in the specification, ascertaining that access is not enabled does not allow for additional comparisons

with the access threshold value that was received. ['751, 8:63-9:32, 10:1-24] The determination that access is not enabled is final until newly received access authorization data renders the existing access threshold value invalid. [*Id.*]

IPCom's proposal to delete the "second part" of the construction while leaving the "first part" as-is would not only render the construction impermissibly broad, it would be tantamount to rewriting the claim language itself. IPCom seeks a construction requiring only "comparing an access threshold value to a random or pseudo-random number to determine whether access to the common telecommunications channel is allowed." [IPCom Mot. for Recons. at 10] While it might not be intuitive from the words themselves, if this were the entire claim construction, then the phone could just keep "comparing" over and over as quickly as the phone were capable of generating successive random numbers. Thus, there could never be any "certain" determination as to whether access is enabled as the result of a comparison because the very next comparison (occurring just a millionth of a second later) could change the result (or the one after that, etc.). In other words, no matter what value was transmitted for the "access threshold value" (low or high), the phone would perform comparisons of the transmitted value with successively generated random numbers so quickly that it would always gain access nearly instantaneously. For example, the "access threshold value (S)" of the '751 patent is just 4 bits wide, which has only 16 possible values ($2^4 = 16$, corresponding to bit values 0000, 0001, 0010 . . . 1111). Considering that each generated random number would have at least a 1/16 chance of being equal to or higher than a broadcasted access threshold value, the phone would always gain access after just a few comparisons – well before the next transmission of access authorization data by the network. Such a system would not "ascertain whether" access is to be granted at all, instead it would merely "*calculate when*" access is granted. Thus, the construction IPCom proposes is directly inconsistent with the claim language itself.

### B. IPCom's Proposed Truncated Construction Is Not Faithful to the Patent's Purpose.

IPCom's proposed truncated construction is also inconsistent with the stated purpose of the claimed invention. The title itself of the '751 patent pertains to "allocating access rights to a telecommunications channel …" and the "program" disclosed in the specification is an algorithm by which the ***network operator*** may "permit or block access . . . as a function of . . . expected utilization of the [network]." ['751, 10:13-18] If the claim were construed to cover mobile phones that perform nearly continuous "comparisons" of the same broadcasted access threshold value with random numbers generated instantaneously by the mobile phone, then the claim would subvert the fundamental purpose of the invention – that the network have the capability to "permit or block" access to the network. *See, e.g.*, *Honeywell Int'l, Inc. v. U.S.*, 609 F.3d 1292, 1299 (Fed. Cir. 2010) (construing "local color display" as requiring a display to emit perceptible red light because the purpose of the invention was to address the need for red warning lights that the crew could see inside the cockpit); *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1324 (Fed. Cir. 2008) (construing "flow restrictor" based on the object of the invention to prevent a hazardous situation from the uncontrolled discharge of gas). In fact, IPCom acknowledges this very point in its Motion:

> If subscriber stations denied initial access "immediately" sought initial access without any wait, such behavior would increase collisions and collapse the channel – exactly what the '751 patent aims to avoid.

[IPCom Mot. for Recons. at 9] IPCom also acknowledges that its own inventor testified about this point at his deposition, but nonetheless argues that the inventor's testimony bears no relationship to the "ascertaining" phrase. This surely cannot be the case because the Court should interpret the claim in a manner that takes into account the problem that the inventors sought to solve. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1160 (Fed. Cir. 1997) (finding claim interpretation of "elasticity" was consistent with the purpose of the invention and stating that "[i]n construing claims, the problem the inventor was attempting to solve, as discerned from the specification and the prosecution history, is a relevant consideration");

*Quickie Mfg. Corp. v. Libman Co.*, 180 F. Supp. 2d 636, 650 (D.N.J. 2002) (problem invention was trying to solve is relevant to claim construction).

The '751 specification explains that the access authorization data are broadcast periodically at "predetermined times, preferably at regular intervals" by the network because these broadcasts are what enable the network to perform access control in accordance with the disclosed program that executes in the phones. ['751, 10:11-23] Considering that the amount of network traffic does not change very quickly, the same access authorization data are most likely re-transmitted over and over. But, if multiple comparisons could be performed against a single broadcasted access threshold value, as IPCom intends by its proposed truncated construction, then there would be no reason to re-transmit unchanged data at regular intervals as disclosed in the specification. Why bother re-sending the same data if the mobile phone can just reuse the access threshold value that was already sent to compare against successive random numbers? The data are re-sent because, when access is ascertained, that decision remains valid for the duration of the period until the next transmission.

### C. The Court's Construction Encompasses All the Relevant Embodiments Disclosed in the Specification.

IPCom's argument that the Court's construction excludes some embodiments disclosed in the '751 patent also rings hollow. In *every* embodiment in the '751 specification there is only a single comparison per transmission of access authorization data to "ascertain whether access is enabled." In one embodiment, the mobile station "informs the user that the access to the r30 was not possible, and waits for further inputs from the user." ['751, 10:3-6] Clearly, if the user just gives up, then the program is not executed again, but if the user wants to try again, then the program re-starts from the beginning and waits for the next transmission of access authorization data. In an alternative embodiment, "by means of a waiting loop embodied in the mobile station, the program is executed over again, so there is a wait for the next information signal with the next bit pattern." ['751, 10:6-9] In this alternative, the decision to re-start the program is automatic, but the result is otherwise exactly the same – only one comparison is performed, and

if access is denied, then the system must wait for the next transmission if access is to be re-attempted.[2]

Given that some embodiments disclosed in the patent allow the user an option not to re-execute the program to pursue access again after denial, the "ascertaining whether" clause does not require that the phone check the next transmission whenever access fails.  HTC understands the Court's construction to mean that it would be necessary to check the next transmission only if the phone were re-attempting access.  So no change needs to be made.  If the existing construction is determined to be at all unclear, HTC offers below in Section III an alternative construction that should leave no doubt that, by "ascertaining," the phone determines whether access is allowed or whether access cannot be allowed at least until the next transmission.  This alternative remains consistent with the Court's reasoning in its Memorandum Opinion, along with the specification and the file history.

## II. IPCOM'S REPRESENTATIONS IN THE CONCURRENT REEXAMINATION PROCEEDING CONTRADICT ITS MOTION AND SUPPORT THAT THE COURT'S CONSTRUCTION IS CORRECT

In the pending reexamination proceeding regarding the '751 patent, IPCom has taken positions that are directly inconsistent with its interpretation of the "ascertaining" phase in its claim construction briefs and Motion.  After the parties already submitted their opening claim construction briefs in November 2009, IPCom submitted new claims in the reexamination proceeding that further evidence that "ascertaining whether access is enabled" is for the period of

---

[2] IPCom argues that the Court's claim construction excludes another disclosed alternative embodiment relating to "other mechanisms such as repeat intervals, which would require some period of waiting, that may be used to relieve traffic on the common channel." [IPCom Mot. for Recons. at 8]  To clarify, this passage of the specification states that, as an alternative, a "repetition counter" could be used to allow the phones to just send out repeated requests for access instead of utilizing the access authorization data or doing any comparison with a random number at all.  ['751, 10:24-41]  As IPCom remarked to the patent examiner in the reexamination proceeding, this technique is not claimed, but could be utilized "in addition to [the claimed] access control methodology."  [Declaration of Michael A. Oblon in Support of HTC's Responsive Claim Construction Brief Ex. G (Dkt. 151-9) (Nov. 25, 3009 Patent Owner's Amendment and Response to Office Action in Inter Partes Reexamination) at 18]  Since, as IPCom acknowledges, this disclosure is not related to the claim, HTC fails to understand IPCom's argument as to how or why it should be accounted for in the Court's claim construction.

time until the next transmission of access authorization data. Specifically, newly submitted claim 27 recites:

> 27. (New) A subscriber station according to claim 26 wherein the evaluation unit is configured to implement a waiting loop configured to wait, in the event access to the at least one telecommunications channel is not enabled, for successive information signals in order to ascertain whether access of the subscriber station to the at least one telecommunications channel is enabled.

[Declaration of Michael A. Oblon in Support of HTC's Responsive Claim Construction Brief ("Oblon Resp. Decl.") Ex. G (Dkt. 151-9) (Nov. 25, 3009 Patent Owner's Amendment and Response to Office Action in Inter Partes Reexamination) at 7]  While asserted claim 13 does not require the implementation of an automatic "waiting loop" as recited in new claim 27, it does require that "ascertaining" occurs once per transmission of access authorization data.  A determination that access is not enabled is therefore "binding" for the duration of the period until the next transmission of access authorization data from the network.  Thus, whether (i) the phone is configured to automatically perform the next comparison upon receiving the next transmission of access authorization data (as in claim 27), or (ii) the phone must wait for the user to send a request to the phone to re-start the access request program in Figure 4 (the alternative described in the patent at 10:3-6), the act of "ascertaining" has a consequence for the duration of the period before the next transmission.[3]

Additionally, the arguments that IPCom is making to distinguish the prior art in the reexamination proceeding are inconsistent with those it makes in its Motion.  In its Motion, IPCom's position is that, even if a claim construction that would allow continually comparing

---

[3] Undoubtedly, IPCom will argue in its Reply that, under the doctrine of claim differentiation, new claim 27 only serves to broaden the meaning of "ascertaining" in claim 13. First, as discussed, claim 27 includes limitations that are not necessarily required for claim 13. And, second, IPCom cannot submit new claims in a reexamination proceeding that is co-pending with this litigation to somehow broaden the already issued claim that it asserts against HTC. *Total Containment, Inc. v. Environ Prods., Inc.*, Nos. 96-1138, 96-1151, 1997 WL 16032, at *2 (Fed. Cir. Jan. 17, 1997) (nonprecendential) (finding patent holder could not invoke claim differentiation to rely on a claim added during reexamination to interpret an original claim in a way that would broaden the scope of that claim because doing so "would invite manipulation of the reexamination process and would not be a reliable guide to the meaning of language used in the original claim").

successively generated random numbers against the same transmitted access authorization data would thwart the purpose of the invention, the claim should not be limited by the invention's purpose. Yet, in reexamination, IPCom attempts to distinguish prior art because it is "unlike the [claimed] form of access, whereby the grant or denial of an access right aims to control the burden on the random access channel by limiting the number of mobile stations that are allowed to transmit on it." [Oblon Resp. Decl. Ex. G at 25] IPCom is therefore estopped from arguing that the purpose of the invention is not relevant to the claim.

### III. IPCOM'S PROPOSED ALTERNATIVE CONSTRUCTION DEPARTS FROM THE CLAIM LANGUAGE AND THE SPECIFICATION DISCLOSURE

At the conclusion of its Motion, IPCom proposes in footnote 1 that as a "compromise," the Court's claim construction would be acceptable if the words "wait for and check the next transmission" were replaced with "waiting before attempting to access the channel again." [IPCom Mot. for Recons. at 9 n.1] This proposed compromise is still unacceptable. The issue is not just that a retry cannot happen immediately; rather, a retry cannot occur until the next transmission of access authorization data by the network. For example, if a phone had processing capabilities fast enough to generate random numbers and successively compare them within one millionth of a second, adding some minimal waiting requirement to force the phone to wait two millionths of a second to perform these comparisons would be meaningless. A proper claim construction must account for the fact that a determination as to whether access is enabled will last for the period until the next transmission.

Of course, no claim construction is perfect, and there will always be some acceptable alternative. If the Court is inclined to make a modification, the claimed phrase could be construed to read:

> comparing an access threshold value to a random or pseudo-random number to determine whether access to the common telecommunications channel is allowed or whether <u>access cannot be allowed at least until</u> ~~the subscriber station (cell phone) must wait for and check~~ the next transmission.

While this construction is similar to the Court's existing construction and has the same consequence, it focuses on the fact that the determination that access is denied is valid for a certain period of time, thereby enabling the network to manage traffic on the network as described in the specification.

**IV.    CONCLUSION**

For the reasons explained above, HTC respectfully requests that the Court deny IPCom's Motion, or, in the alternative, issue an order amending its construction of "ascertaining . . . whether" to read as follows: "comparing an access threshold value to a random or pseudo-random number to determine whether access to the common telecommunications channel is allowed or whether access cannot be allowed at least until the next transmission."

DATED:  October 22, 2010                     PERKINS COIE LLP

 /s/ Michael A. Oblon
John S. Skilton
Perkins Coie LLP
1 East Main Street, Suite 201
Madison, Wisconsin  53703-5118
Telephone:  (608) 663-7460
Facsimile:  (608) 663-7499
JSkilton@perkinscoie.com

Michael A. Oblon
Perkins Coie LLP
607 Fourteenth Street N.W.
Washington, D.C.  20005-2003
Telephone:  (202) 628-6600
Facsimile:  (202) 434-1690
MOblon@perkinscoie.com

Jonathan M. James (Admitted Pro Hac Vice)
Perkins Coie Brown & Bain P.A.
2901 North Central Avenue, Suite 2000
Phoenix, Arizona  85012
Telephone:  (602) 351-8000
Facsimile:  (602) 648-7000
JJames@perkinscoie.com

Attorneys for Plaintiffs, Counterclaim-Defendants
HTC Corporation and HTC America, Inc.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true copy of the foregoing instrument was served on opposing counsel via email and the Court's CM/ECF system.

        /s/ Tyler R. Bowen
        Attorney for Plaintiffs, Counterclaim-Defendants
        HTC Corporation and HTC America, Inc.