UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HTC CORPORATION, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1897 (RMC) |
| | ) | |
| IPCOM GMBH & CO., KG, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION REGARDING IPCOM'S MOTION FOR PARTIAL RECONSIDERATION AND SUPPLEMENTATION OF RECORD REGARDING THE 216 PATENT

By Opinion and Order issued March 16, 2012, this Court held that products sold by HTC Corporation and HTC America, Inc. do not infringe U.S. Patent No. 5,390,216, owned by IPCom GMBH & Co., KG. IPCom now moves for partial reconsideration and seeks to supplement the record, to show infringement under the doctrine of equivalents and to limit the scope of the ruling in HTC's favor. Neither of these goals provides a basis for reconsideration. IPCom's motion will be denied, except insofar as it seeks to clarify that the Court's finding of noninfringement with regard to Claim One substep 3.2 of the 216 Patent applies only to HTC[1] devices that use chips manufactured by Qualcomm Inc.

## I. FACTS

The Court determined that HTC products do not infringe substeps 1.2 and 3.2 of Claim One of the 216 Patent, a patent that claims a method for synchronizing a cell phone with a cell tower. Claim One states:

---

[1] HTC Corporation and HTC America, Inc. are collectively referred to as "HTC."

A method of synchronizing a mobile radiotelephone in a cellular digital mobile radiotelephone network comprising a plurality of fixed radiotelephone stations and a plurality of mobile radio stations operating in accordance with a GSM standard or its equivalent, in which each communication frequency assignment is subdivided into interleaved time slots, a plurality of said time slots together comprising a frame, comprising the following steps which are carried out in the mobile radiotelephone:

(1) conducting an initial synchronization by means of a frequency correction burst substantially fully occupying a time slot with an unmodulated wave corresponding to repetition of bits of the same binary logic value;

(2) maintaining normal synchronization during communication by means of interspersed normal synchronization bursts, each normal synchronization burst containing a training sequence occupying less than a third of a time slot; and

(3) performing extended synchronization during communication as a background procedure by means of interspersed frequency synchronization bursts, each frequency synchronization burst containing an extended training sequence occupying less than an entire time slot and more than a third of a time slot, and wherein:

said step of conducting said initial synchronization comprises the substeps of:

    (1.1) conducting a coarse frequency synchronization,

    *(1.2) conducting a coarse frame synchronization over a plurality of said time slots which comprise a frame,*

    (1.3) conducting a fine frequency synchronization, and

    (1.4) conducting a fine frame synchronization over said plurality of time slots which comprise a frame;

said step of maintaining said normal synchronization comprises the substeps of:

    (2.1) conducting a frame synchronization with fine frequency synchronization, and

(2.2) carrying out preliminary data signal processing; and

said step of performing said extended synchronization comprises the substeps of:

(3.1) conducting a coarse frame synchronization, and

*(3.2) conducting a fine frame synchronization with fine frequency synchronization.*

216 Patent 8:62-9:46 (emphasis added to show substeps at issue in this Opinion).

The accused HTC products are mobile phones that are designed and manufactured by HTC but include chipsets supplied by Texas Instruments or Qualcomm Inc. The chipsets include modem processors used for radio communications and digital signal processors that perform mathematical operations. In granting summary judgment to HTC, the Court found that HTC's accused products do not infringe Claim One of the 216 Patent because none performs each of the substeps of Claim One. *See* Mem. Op. Regarding HTC's Mot. for Summ. J. of Noninfringement or Invalidity of the 216 Patent [Dkt. 324] ("March 16 Op.").[2]

The decision on summary judgment naturally relied on the Court's construction of the 216 Patent. More specifically, in its *Markman*[3] ruling, the Court construed substep 1.2, "conducting a coarse frame synchronization over a plurality of said time slots which comprise a frame," to mean "controlling a first frame synchronizing process that *utilizes a corrected phase course* of a detected frequency correction burst *to identify a range* within which the beginning of a

---

[2] Because Claims Two and Five through Ten of the 216 Patent depend from Claim One, thereby incorporating its limitations, the Court held that the accused products do not infringe those Claims either. *See* March 16 Op. at 26.

[3] In *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), the Federal Circuit determined that courts, not juries, must interpret the meaning of patent claims.

frame falls." Markman Op. at 20 (emphasis added). The Court construed substep 3.2, "conducting a fine frame synchronization with fine frequency synchronization" to mean "controlling a process to monitor and maintain the frame timing in step between the mobile station and neighboring base station *while also* maintaining the frequency within a desired operating accuracy between the mobile station and the neighboring base station, by producing frame shift and frequency correction parameters when crossing a cell boundary." Markman Op. at 26-27 (emphasis added). Because HTC's phones do not (1) "utilize a corrected phase course" or (2) "identify a range" as required by substep 1.2, the Court granted summary judgment to HTC. March 16 Op. at 13-18. In addition, the Court found that the accused products do not maintain frequency synchronization "when crossing a cell boundary" as required by substep 3.2 and for that reason as well did not infringe the 216 Patent.

IPCom does not seek reconsideration of the ruling that HTC cell phones do not "identify a range" as required by substep 1.2. Instead, IPCom contends that the March 16 Opinion modified the Court's original claim construction regarding the terms "utilize a corrected phase course" in substep 1.2 and "while also" in substep 3.2. IPCom wants to supplement the record with evidence of infringement under the doctrine of equivalents, which it says it did not previously argue because of the Court's initial claim construction. Assuming victory on this point, IPCom seeks an order limiting judgment in HTC's favor to one of no *literal* infringement as to the ". . . phase course" and "while also" terms from substep 1.2 and substep 3.2.[4] Without objection from HTC, IPCom also

---

[4] By asking for such "limitation" of the judgment, IPCom actually seeks an order vacating the judgment in part under the doctrine of equivalents, insofar as the Court found no infringement of the contested terms from substeps 1.2 and 3.2. IPCom notes that granting its motion in full would leave the judgment of noninfringement intact concerning the substep 1.2 "identify a range" requirement.

asks the Court to clarify that its judgment of non infringement of substep 3.2 applies only to HTC devices that use chips manufactured by Qualcomm Inc. Only the request for clarification will be granted.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(b), which governs the motion, provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Relief under Rule 54(b) is available "as justice requires." *DL v. Dist. of Columbia*, 274 F.R.D. 320, 324 (D.D.C. 2011). "[A]sking 'what justice requires' amounts to determining, within the court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). Circumstances that may be relevant include whether a court has "'patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court.'" *Ficken v. Golden*, 696 F. Supp. 2d 21, 35 (D.D.C. 2010) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)) (alterations in original). A court's discretion under Rule 54(b) is limited by the law of the case doctrine and "subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Washington University*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005).

## III. ANALYSIS

### A. Substep 1.2 — Coarse Frame Synchronization

IPCom contends that the Court's opinion on summary judgment changed its interpretation of substep 1.2 from the construction in the Markman opinion. Based on this perceived change, IPCom argues that it should be permitted to supplement the instant record to include evidence that the accused products perform substantially the same functions in substantially the same ways to "utilize a corrected phase course" as required by substep 1.2 — and thus infringe the 216 Patent under the doctrine of equivalents. In its summary judgment papers, IPCom offered only a conclusory contention that HTC's products infringe substep 1.2 under the doctrine of equivalents; it provided no particularized evidence or argument regarding why the Court should find the differences between the accused HTC products and the 216 Patent insubstantial. Without more, the Court held that the doctrine of equivalents argument failed. IPCom now seeks to supply such evidence, justifying its late motion with the alleged material change in construction of the 216 Patent.

The Court construed substep 1.2, "conducting a coarse frame synchronization over a plurality of said time slots which comprise a frame," to mean "controlling a first frame synchronizing process that *utilizes a corrected phase course* of a detected frequency correction burst to identify a range within which the beginning of a frame falls." Markman Op. at 20 (emphasis added). The summary judgment opinion concluded that the accused products do not infringe substep 1.2, in part, because they do not calculate a corrected phase course: "[b]ecause [the accused products] do not calculate phase angles, they do not calculate sequences of phase angles (a phase course), and they do not use such sequences to perform coarse frame synchronization." March 16

Op. at 16. The Court explained:



They do not calculate phase angles.

Oblon Decl., Ex. 7 (Stark Report 5/6/2011) ¶ 110.  The HTC products do not take I and Q samples, convert them into phase angles, and then determine the rate of change of the angles.  Oblon Decl., Ex. 6 (Stark Dep.) at 98-100.

Oblon Decl., Ex. 8 (Overby Report) ¶¶ 230-239. Notably, Dr. Stark, to whom HTC frequently refers for support, is IPCom's expert.

*Id.* at 14-15.  The Court further reasoned:

> In order to create a phase course, phase angles must first be calculated.  HTC products ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but do not calculate phase angles.  IPCom has failed to cite any evidence that HTC products calculate phase angles.  Inasmuch as HTC products do not calculate phase angles, they do not create a phase course or use a corrected phase course.  Accordingly, summary judgment will be granted in favor of HTC on this issue.  The accused products do not infringe substep 1.2, and thus do not infringe Claim One, of the 216 Patent.

*Id.* at 16.

Contrary to IPCom's assertion, the Court did not change its interpretation of the 216 Patent.  It merely applied the claim construction set forth in the Markman Opinion.  The parties'

experts agreed that a "phase course" is a sequence of phase values. March 16 Op. at 15. The Court

pointed to the specification:

> The specification teaches, "[a]ll of the synchronization routines which
> take place with the help of the synchronizing processor 28 are based
> on the processing of the phase angles *calculated from* the I and Q
> components." *Id.* at 5:11-15 (referring to Fig. 2) (emphasis added).
> The phase angle of an I, Q pair is a ratio; "[t]he relative I and Q
> magnitudes (i.e. *the proportion*) in each case define a phase angle."
> 216 Patent, 4:30-34 (emphasis added).

*Id.* In addition, IPCom's expert, Dr. Wayne Stark, conceded that HTC products do not take I and

Q samples, convert them into phase angles, and then determine the rate of change of the angles. *Id.*

at 14.

      IPCom points to another expert, Dr. David Goodman, who stated that a phase course

is an "inherent property" of the I and Q signals. *See* IPCom's Opp'n [Dkt. 268] at 18 (citing

Goodman Dep. at 113 (July 1, 2011)). IPCom reasons that since a phase course is an "inherent

property" of the signals, a phase course is always utilized. But Dr. Goodman's statement was made

without support or explanation, and the Court rejected his assertion in light of the language of the

specification and Dr. Stark's concession that HTC products do not calculate phase angles.

      IPCom further contends that it did not understand that the Court had interpreted 1.2

as requiring calculation of phase angles due to language in the Markman Opinion construing the term

"synchronizing." The Court defined "synchronizing," as used in the first line of Claim One, as "[a]

method of synchronizing a mobile radiotelephone in a cellular digital mobile radiotelephone

network." 216 Patent at 8:62-64. The Court adopted IPCom's proposed definition, finding that

"synchronizing" means "[b]ringing the mobile station's operation in step with the corresponding

operation of a base station." Markman Op. at 14. The Court rejected HTC's proposed definition —

that "synchronizing" means "[b]ringing a mobile station's operation in step with the corresponding operation of a base station by performing processes that evaluate a continuously running phase angle calculated from burst signals received from the base station." *Id.* at 12-14.  The Court explained:

> While the specification in the 216 Patent describes evaluation of phase angles, no expressly limiting language is used in Claim One. The focus of Claim One is the method of sequential steps and substeps, not the precise contours of how one practices the invention. Claim One is not bounded by the limitations of relying on evaluating phase angles, as these limitations appear in dependent claims and not in Claim One. Given the structure of the 216 Patent, the Court cannot conclude that Claim One is so limited.

*Id.* at 13-14.

IPCom uses the Court's interpretation of the word "synchronizing" as its basis for ignoring the Court's express and specific interpretation of substep 1.2 — requiring the use of a "corrected phase course" with attendant calculation of phase angles.  On summary judgment, IPCom could not reject or ignore the Court's construction of substep 1.2 and complain later.  If IPCom thought that the Markman Opinion needed clarification, it should have filed a motion for clarification or reconsideration of the Markman Opinion.  It did not do so.  Instead, the case progressed with HTC arguing that its products did not calculate phase angles as required by substep 1.2 and IPCom arguing that the accused products did, in fact, calculate and use such phase angles.

HTC's expert, Dr. Michael Kotzin, submitted a report asserting that the accused products do not infringe substep 1.2 literally or by equivalents because the products do not calculate or utilize phase courses.  HTC's Notice of Filing CDs [Dkt. 295], Kotzin Decl., Ex. 2 (Kotzin 6/24/11 Rebuttal Report) ¶¶ 303-312, 340-43.  In rebuttal, IPCom filed a supplemental report of Dr. Stark, but Dr. Stark did not respond to Dr. Kotzin's opinions regarding substep 1.2.  *See* IPCom's

Statement of Facts and Exhibits [Dkt. 268], Ex. 1 (Stark Decl.), Ex. C (Stark 7/7/11 Supp. Rep.).

After this series of dueling expert reports, HTC moved for summary judgment on substep 1.2,

relying on the Markman Opinion and Dr. Kotzin's Rebuttal Report. In opposition, IPCom argued

that the accused products literally infringe with only a passing glance at infringement by equivalence.

Although a court has broad discretion to permit parties to supplement the record

when claims construction has changed,[5] the Court's construction of the Patent here did not change;

it merely applied its specific construction of substep 1.2 to the parties' arguments concerning literal

infringement of that substep. While IPCom may now view the Markman Opinion's construction of

"synchronizing" from the first line of Step 1 as inconsistent with its construction of "utilizing a

corrected phase course" in substep 1.2, IPCom's current view does not *change* the Court's

construction of substep 1.2 and it is that construction that was determinative on summary judgment.

IPCom cannot now raise a new doctrine of equivalents claim; not only is expert discovery long since

closed and the prejudice to HTC clear, but there is no basis under the rules or precedent to re-open

the case. *See, e.g., Procter & Gamble Co. v. McNeil-PPC, Inc.*, 615 F. Supp. 2d 832, 838-39 (W.D.

Wis. 2009) (striking supplemental expert report where plaintiff's failure to address doctrine of

equivalents in the initial expert reports was "plaintiff's choice" and plaintiff did not show good cause

for its failure); *Mosaid Techs. Inc. v. Samsung Elec. Co., Ltd.*, 362 F. Supp. 2d 526, 543, 559 (D.N.J.

2005) (denying patent holder's motion to supplement expert report in order to add new equivalents

argument, where the patentee had made only a conclusory equivalents argument in the initial expert

---

[5] *See, e.g., Lexion Med., LLC v. Northgate Techs., Inc.*, 641 F.3d 1352, 1358 (Fed. Cir. 2011) (because of new claim construction, district court had discretion to permit record supplementation with new declarations consistent with the new interpretation of the patent); *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1317 (Fed. Cir. 2008) (because of a change in the claim construction, the district court had discretion to permit a party to amend its defenses).

report).[6]  Because IPCom failed to timely raise any argument that it had regarding infringement of substep 1.2 under the doctrine of equivalents, it has waived such argument.  The motion for reconsideration and supplementation of the record will be denied with regard to substep 1.2.

### B. Substep 3.2 — Extended Synchronization

IPCom's argument regarding substep 3.2 starts in the same place as its argument regarding substep 1.2.  Alleging that the Court changed its interpretation of substep 3.2, IPCom contends that the Court should partially vacate its judgment and allow IPCom to supplement the record to include evidence of infringement under the doctrince of equivalents. This part of IPCom's motion will also be denied.

The Court construed "(3.2) conducting a fine frame synchronization with fine frequency synchronization" to mean "controlling a process to monitor and maintain the frame timing in step between the mobile station and neighboring base station *while also* maintaining the frequency within a desired operating accuracy between the mobile station and the neighboring base station, by producing frame shift and frequency correction parameters when crossing a cell boundary." Markman Op. at 26-27 (emphasis added).  At summary judgment, the parties contested whether the phrase "while also" required fine frame synchronization to be conducted in the very same frame as

---

[6] *See also Regents of Univ. of Minn. v. AGA Med. Corp.*, 835 F. Supp. 2d 711, 729 (D. Minn. 2011) (finding that defendant "clung to an unreasonable, strategically motivated reading of the Court's Markman order throughout the discovery period" and thus "the Court's rejection of that unreasonable reading in the Court's summary judgment order does not justify [defendant] in offering new, untimely expert opinions . . . ."); *Zelinski v. Brunswick Corp.*, 996 F. Supp. 757, 764-65 (N.D. Ill. 1997) (granting summary judgment of noninfringement where the patentee "hoped" for a finding of literal infringement and failed to take discovery on its equivalence arguments; "Courts need not aid non-movants who have occasioned their own predicament."); *In re Perry*, 918 F.2d 931, 934 (Fed. Cir. 1990) ("[A]n 'empty head and pure heart' defense will not excuse objectively unreasonable conduct.").

fine frequency synchronization.  IPCom contended that the process of monitoring and maintaining

frame synchronization "while also" maintaining frequency synchronization was satisfied by HTC's

accused products because ██████████████████████████████████████████████

██████████████████████.  Noting that a synonym for "while also" is "simultaneously," the

Court determined that the HTC products that use Qualcomm chipsets do not infringe because

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████   March 16 Op. at 21-23.

Similar to the equivalence argument regarding substep 1.2, IPCom failed to detail

specific evidence explaining why the differences between the HTC products that use Qualcomm

chipsets and the 216 Patent are insubstantial and the Court found that the doctrine of equivalents

argument regarding substep 3.2 failed.  IPCom now seeks to supplement the record with evidence

of equivalence, again justifying this belated addition to the record by its assertion that the Court

somehow altered its interpretation of the 216 Patent.

The Court's use of the synonym "simultaneous" for "while also" does not constitute

a change in its interpretation of the Patent.  Even if IPCom did not understand that the Court viewed

"while also" as meaning "simultaneously," IPCom knew that the question of whether the accused

products conduct frame synchronization "while also" maintaining frequency synchronization was

at issue.  HTC made its position clear:  HTC products that use Qualcomm chipsets do not perform

frame synchronization while also performing frequency synchronization because ████████████

██████████████████████████████████████████████████   IPCom was not

somehow surprised.  If it had an argument for infringement under the doctrine of equivalents, the

time to make it was in response to HTC's motion for summary judgment.  IPCom cannot now have a second bite at the apple.

The motion for reconsideration and supplementation of the record will be denied with regard to substep 3.2, except that the finding of noninfringement regarding substep 3.2 will be clarified to limit it to HTC devices that use chips manufactured by Qualcomm Inc.

## IV. CONCLUSION

For the reasons set forth above, IPCom's motion for partial reconsideration and supplementation of the record [Dkt. 332] will be granted in part and denied in part.  The motion will be granted only as follows:  the Order will clarify that the finding of noninfringement with regard to Claim One substep 3.2 of the 216 Patent applies only to HTC devices that use chips manufactured by Qualcomm Inc.  The motion will be denied in all other respects.  A memorializing Order accompanies this Opinion.


Date:  August 28, 2012                             /s/
                                    ROSEMARY M. COLLYER
                                    United States District Judge